W. F. HALL PRINTING Co. *et al.*, Plaintiffs-Appellees, *v.* THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Defendants-Appellants.

(No. 59238;

First District (5th Division)—December 28, 1973.

*Modified opinion filed upon denial of rehearing January 25, 1974.*

William J. Scott, Attorney General, of Chicago (Dennis R. Fields, Lee A. Campbell, Richard W. Cosby, Thomas J. Immel, and Marvin Metinz, Assistant Attorneys General, of counsel), for appellants.

Sneider and Troy, of Chicago (Richard J. Troy and Gayle F. Haglund, of counsel), for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Defendant, The Environmental Protection Agency (EPA), filed a complaint with defendant Pollution Control Board (Board) alleging that plaintiffs, W. F. Hall Printing Company and its subsidiary, Rotoprint Company, were emitting solvents, hydrocarbons, particulate matter, odors, and other contaminants from their plants so as to cause air pollution, in violation of section 9(a) of the Illinois Environmental Protection Act (Act). (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) After hearings had proceeded for some months, the EPA filed an amended complaint on June 11, 1973, by which the period of the plaintiffs' alleged violations was enlarged and fixed as having commenced on July 1, 1970,

the effective date of the Act, thereby significantly increasing the potential fine.

Without responding to the EPA's complaint, plaintiffs filed their own complaint against the EPA, its Director, the Board and its members, seeking an injunction in the circuit court of Cook County restraining defendants from proceeding with a hearing as to odor violations. The other charges in the EPA's amended complaint against plaintiffs were not involved in the injunction suit. Plaintiffs alleged that until such time as the Board had determined standards or adopted regulations with respect to odors (which it had not done), a hearing as to odor violations would exceed the authority granted to the EPA and the Board under the Act, deny to plaintiffs due process of law and equal protection of the laws guaranteed by the United States and Illinois constitutions, and violate article VI, section 9, of the Illinois constitution of 1970, which vests original jurisdiction of all justiciable matters in the courts.

Plaintiffs filed a motion for a temporary (i.e., preliminary) injunction. In response, defendants filed a motion to dismiss the complaint, questioning the court's jurisdiction, alleging that the Board has constitutional and statutory authority to hear the EPA's complaint, that plaintiffs have an adequate remedy at law, and that plaintiffs had not exhausted their administrative remedies. The court denied defendants' motion to dismiss and entered the preliminary injunction prayed for by plaintiffs. Defendants have appealed.

OPINION

Defendants' appeal is based on two major contentions. The first is that plaintiffs must exhaust their administrative remedies before seeking a court determination of the issues. The second, related argument is that injunctive relief is not available to plaintiffs because they have an adequate remedy at law and have not shown that irreparable injury would result from a failure to enjoin defendants from proceeding with an administrative hearing as provided by the Act.

■■ The "exhaustion" doctrine provides that a party believing himself to be injured by an administrative agency's action or failure to act must pursue remedies within the administrative scheme before seeking relief from the courts. It is designed to allow administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before seeking judicial relief.

The exhaustion doctrine has been followed in Illinois (Bright v. City of Evanston, 10 Ill.2d 178, 139 N.E.2d 270), subject only to the exceptions where a statute is claimed to be void on its face (Bright, at 185), or an administrative agency's power to proceed is challenged for lack of jurisdiction (Horan v. Foley, 39 Ill.App.2d 458, 188 N.E.2d 877).

The Board, under its own rules, has established a procedure for dismissing complaints for want of jurisdiction. (Pollution Control Board Procedural Rule 308(f).) The respondent (here, plaintiffs) need only make a motion before the Hearing Officer for a Board determination. No such motion was ever made. Hence, plaintiffs have not exhausted their administrative remedies.

■■ Ordinarily, then, judicial consideration of the case at this stage would not be appropriate, since the controversy could be resolved by the Board's determination that it lacks jurisdiction. But the Board, by pursuing this appeal on the ground that it has the authority to proceed with the part of the complaint alleging violations arising from the emission of odors, has indicated that any such motion would be futile. Furthermore, although plaintiffs' allegations were to the contrary in its circuit court complaint, on oral argument there was no disagreement with the proposition that section 9 of the Act does purport to confer jurisdiction on the Board to find violations of the Act itself, even where no regulations have been promulgated or standards determined by the Board. See our opinion filed today in accord with this concept of the Board's authority. *Mystik Tape, Division of Borden, Inc. v. Pollution Control Board,* 16 Ill.App.3d 778.

Plaintiffs maintain that the Act does not within itself contain sufficient standards or definitions to guide defendants in their delegated duties, and that by proceeding to a hearing without determining such standards for odors, defendants will deprive plaintiffs of their constitutional rights. Defendants concede that no odor regulations or standards have been promulgated for plants such as plaintiffs.

Plaintiffs contend, in effect, that in the absence of Board-created standards or regulations, the portion of section 9 purporting to treat the causing of air pollution as a violation of the Act is void on its face, and that, under the rule in *Bright v. City of Evanston,* 10 Ill.2d 178, 139 N.E.2d 270, exhaustion of administrative remedies is not required. And this, because while the Board has authority to determine that it lacks jurisdiction under a statutory delegation, it has no authority to pass on the constitutionality of the delegation itself, this being a judicial function.

We turn, then, to the merits of plaintiffs' contentions that they are entitled to injunctive relief.

■■ Plaintiffs first argue that the absence of standards precludes adequate preparation of their defense. The Act provides that the EPA or other complainant must bear the burden of proving a violation of the Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c).) In doing so here, the EPA would have to show that plaintiffs' plants are emitting odors so as to cause "the presence in the atmosphere of one or more contaminants

in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).) If the EPA were to meet its burden in this regard, each plaintiff would then be able to defend by showing e.g., that no odor is emitted by its plants, or that any emitted odor does not interfere with life or property, or, if it did, that any such interference was reasonable in the light of the factors to be taken into consideration pursuant to section 33(c) of the Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).) More pertinent to plaintiffs' point, perhaps, is the fact that they would also have the opportunity to obtain pre-hearing discovery and particulars. (Board Procedural Rule 313.) Again see *Mystik.*

Plaintiffs' second contention is that they are denied due process of law because the Board has no criteria on which to base its decisions. While this is not true as to the issue of reasonableness because of the mandates of section 33(c), standards as to contaminants, their quantity, characteristics, etc., have not yet been determined by the Board. But we are of the opinion that the Board may do so on a case by case basis, as explained in *Mystik, supra.*

■■ Third, plaintiffs claim a denial of due process on the ground that even if an adverse ruling were to be made by the Board, plaintiffs would be left without standards to govern their conduct so as to avoid further action by the EPA. This argument assumes that the Board's order will be so unspecific as not to determine proper standards for the case, and that reasonable opportunity to meet them would not be afforded by the Board's order prior to the assessment of any penalty. In such event, we would agree with plaintiffs that the requirements of due process would not have been met. At this stage of the proceedings, however, we cannot make that assumption. No rulings have been made and no order of any kind has been issued by the Board. It is the policy of Illinois courts "to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." (*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 18 L.Ed.2d 681, 87 S.Ct. 1507, cited with approval in *Gromer Supermarket, Inc. v. Pollution Control Board*, 6 Ill.App.3d 1036, 1043, 287 N.E.2d 1.) On the state of the record we therefore conclude that this issue is not ripe for judicial determination.

■■ Although the Act does not require the Board to promulgate regulations or determine standards in advance of a hearing, plaintiffs contend that the adoption of a Board regulation governing odors emitted by inedible rendering processes and the failure to adopt comparable regulations for printing processes is a denial of equal protection of the laws.

It is true that manufacturers who engage in inedible rendering processes are now able to measure their odor emissions against a Board regulation, and plaintiffs cannot. But we believe plaintiffs have failed to show that this distinction is so unreasonable as to be constitutionally impermissible. ██ The legislature has granted to the Board the authority to make regulations, and it has made the exercise of that authority discretionary. (Ill. Rev. Stat. 1971, ch. 111½, par. 1010.) Consistent with the terms of the Act, the Board may, in our opinion, choose either to promulgate regulations or to develop standards in the course of case-by-case enforcement proceedings, as we have stated above, and in *Mystik*. The Board is presumed to have the expertise to determine which aspects of the pollution problem are most susceptible to fixed regulations and most worthy of the expenditure of time and money necessitated by the procedure for promulgation of substantive regulations. (Ill. Rev. Stat. 1971, ch. 111½, par. 1026 *et seq.*) As the legislature's delegate, the Board may, like the legislature, "take one step at a time, addressing itself to the phase of the problem which seems most acute *   *   *.*" *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 99 L.Ed. 563, 75 S.Ct. 461.

██ Furthermore, to require the Board to adopt regulations for all types of pollution, or even for all sources of odors, would result in a subversion of the legislative policy of leaving the promulgation of regulations to the discretion of the Board. It would also discourage the Board from adopting any regulations at all unless the entire field of pollution could be regulated at the same moment, a colossal and time-consuming undertaking which could meanwhile deprive the State of some anti-pollution proceedings, and deprive some alleged polluters of whatever benefit might accrue to them through the issuance of pre-hearing regulations.

Plaintiffs finally contend that the Board will make its determination by applying common law nuisance principles, and in doing so will engage in a judicial function contrary to article VI, section 9, of the constitution of 1970. We agree with plaintiffs to the extent that the Board is not authorized by the legislature to determine and proceed against common law nuisances. Rather it must proceed strictly within the authority defined by the Act. On this point, we again refer to our opinion in *Mystik Tape, Division of Borden, Inc. v. Pollution Control Board*, 16 Ill.App.3d 778.

The circuit court erred in denying defendants' motion to dismiss and in ordering the issuance of a preliminary injunction. The latter is therefore reversed and the cause is remanded to the circuit court with instructions to dismiss the complaint.

Reversed and remanded.

LORENZ and SULLIVAN, JJ., concur.